sUNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEVEN L. COLE, for himself and on behalf of similarly situated individuals, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. CIV-20-655-G |
| SCOTT CROW, Director, O.D.O.C., et al., | )<br>)<br>)<br>) |
| Defendants. | ) |

## ORDER

Plaintiff Steven L. Cole, a state prisoner, brings this action under 42 U.S.C. § 1983, alleging violations by Defendants[1] of his constitutional rights to equal protection and due process. This matter was referred to United States Magistrate Judge Gary M. Purcell in accordance with 28 U.S.C. § 636(b)(1).

On July 30, 2021, Judge Purcell issued a Report and Recommendation ("R. & R.," Doc. No. 50), in which he recommended that Defendants' Motion to Dismiss (Doc. No. 43) be granted[2] and that Plaintiff's Motion for Class Certification (Doc. No. 35) be denied.[3] Defendants filed a joint Objection to the R. & R. *See* Defs.' Obj. (Doc. No. 53). Plaintiff

---

[1] The defendants are: Scott Crow, Director of the Oklahoma Department of Corrections ("ODOC"); Tonia Dickerson, ODOC Manager of Sentence Administration; Lonnie Lawson, Warden, William S. Key Correctional Center ("WSKCC"); and Donna McCaslin, WSKCC Case Manager Supervisor. *See* Second Am. Compl. (Doc. No. 34) at 1, 3-4. Each Defendant is sued in his or her official and individual capacities. *See id.* at 3-4.

[2] Plaintiff filed a Response (Doc. No. 46) to the Motion to Dismiss.

[3] Defendants filed a Response (Doc. No. 45) to Plaintiff's Motion.

also objected to the R. & R., *see* Pl.'s Obj. (Doc. No. 54), and additionally filed a Notice of Dismissal (Doc. No. 51). Neither party has responded to the other's Objection.

Pursuant to governing authority, the Court reviews de novo the portions of the R. & R. to which specific objections have been made. *See United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Having conducted this de novo review, the Court finds as follows.

I.     *Background*

The R. & R. accurately summarized the Fourteenth Amendment claims raised by Plaintiff's pro se Second Amended Complaint:

> Pursuant to [title 21, section 13.1 of the Oklahoma Statutes], Oklahoma law prohibits the application of earned credits to reduce sentences imposed for certain violent crimes, including robbery with a dangerous weapon, until the convicted individual has served 85% of his sentence. Okla. Stat. tit. 21, § 13.1(8) ("Persons convicted of these offenses[,including robbery with a dangerous weapon,] shall not be eligible for earned credits or any other type of credits which have the effect of reducing the length of the sentence to less than eighty-five percent (85%) of the sentence imposed."). Based on Plaintiff's conviction for Robbery with a Firearm, he is not eligible for credits that reduce his sentence lower than 85%.
>
> Construing Plaintiff's [Second] Amended Complaint liberally, Plaintiff raises several claims related to good time credits. In his first and third claims, Plaintiff explains that in order to participate in Re-Entry/Stepdown and Reintegration Programs, which are designed to prepare inmates for acclimating to life outside of prison, the inmate has to be within 760 days from his discharge date. [Second] Am. Comp. at 10-12, 17-19. As noted, 85% inmates cannot have their credits applied to their sentence until they have formally served 85% of the same. *Id.* Plaintiff contends this usually results in the inmates being released upon meeting their 85% date because the sudden application of their credits fulfills their 100% sentence, sometimes with extra credits remaining. *Id.* However, eligibility calculations for the Re-Entry/Stepdown and Reintegration Programs use the 100% sentence discharge date. *Id.* This means that unlike the non-85%

> inmates, the 85% inmates can never participate in these programs prior to their release.
>
> Plaintiff contends this disparate treatment between the 85% and non-85% inmates does not have a rational basis and is a violation of his equal protection rights. *Id.* at 5, 10-12. Relying on his Consolidated Record Card, Doc. No. 23-2 at 2, Plaintiff notes that he is accruing credits, though they cannot be applied until he reaches his 85% date, and that he can lose them before he reaches that date.
>
> Based on this, Plaintiff asserts both substantive and procedural due process claims, arguing that since he can lose the credits that could otherwise be applied in the future, he has a state created liberty interest in the same. *Id.* at 17-19.
>
> In his second claim, Plaintiff asserts that the prohibition against his ability to apply good time credits to his sentence is a violation of his due process rights. *Id.* at 15-17. He contends it is a violation of due process and equal protection to not permit 85% inmates to receive the benefits of the credits they are allowed to earn. *Id.* at 15-17. Additionally, he asserts Okla. Stat. tit. 21, § 13.1 does not place any limits on the number of good time credits the 85% inmates can earn before they reach their 85% discharge date, meaning that some inmates earn more credits than necessary to take their sentence to completion once they reach 85% and their credits are applied. *Id.* at 15-16. When that occurs, Plaintiff argues that he should receive monetary compensation for the extra credits earned. *Id.*

R. & R. at 2-4 (second alteration in original) (footnote omitted); *see* Second Am. Compl. 5-7, 10-24; *see also* Pl.'s Suppl. (Doc. No. 40).[4]

In the R. & R., Judge Purcell addressed Plaintiff's factual allegations and the applicable standards of review. Judge Purcell concluded that the due process claim raised in Plaintiff's Claim Two should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* R. & R. at 6-8 ("Because Plaintiff is not entitled to the application of earned

---

[4] Although Plaintiff's pleading also references the Fifth Amendment, Plaintiff makes no allegation that Defendants' alleged conduct constitutes federal action.

3

sentence credits to reduce his sentence, he has no state-created liberty interest in said credits."). Judge Purcell further recommended that Plaintiff's remaining claims be allowed to proceed and that Plaintiff's Motion for Class Certification be denied. *See id.* at 9-12.

## II.   *Plaintiff's Claim Two*

Shortly after the R. & R. was issued, Plaintiff filed a Notice of Dismissal, seeking to dismiss and remove from his pleading "Claim 2[,] which alleges 'deprivation of liberty[,]' along with the due process portion of Claim 3 pertaining to this issue only." Pl.'s Notice of Dismissal at 1 (emphasis omitted). Defendants did not respond to Plaintiff's filing or otherwise object to dismissal of these claims.

Having reviewed Plaintiff's request and the relevant record, the Court finds that dismissal is proper and should be allowed. *See* Fed. R. Civ. P. 41(a)(2); Second Am. Compl. at 6-7, 8, 15-19. Plaintiff's Claim Two ("Deprivation of Liberty"), as well as any request for relief within Claim Three premised upon a state-created liberty interest in the earning of sentence credits, shall be dismissed without prejudice.

## III.   *Plaintiff's Remaining Claims*

The R. & R. found that Defendants' Motion to Dismiss "only address[ed] Plaintiff's second claim" and failed to "set forth a basis of dismissal" for Plaintiff's remaining due process and equal protection claims—i.e., the claims "focused on the ability of non-85% inmates to participate in the Re-Entry/Stepdown and Reintegration Programs." R. & R. at 4, 9-10.

Defendants do not dispute this finding. Indeed, Defendants' Objection fails to present a "specific . . . objection[]" to any finding or recommendation set forth in the R. &

R. Fed. R. Civ. P. 72(b)(2). Rather, Defendants now ask the Court to consider a variety of reasons that Plaintiff's remaining claims should be dismissed, none of which "w[as] . . . raised in the Defendants' Motion to Dismiss" with respect to those claims. Defs.' Obj. at 1-2.

With one exception, the Court declines to consider these new arguments. *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("[T]heories raised for the first time in objections to the magistrate judge's report are deemed waived."); *cf.* Fed. R. Civ. P. 72(b)(3) (prescribing that the role of the district judge in resolving objections is to "determine de novo any part of the magistrate judge's disposition that has been properly objected to"). To the extent Defendants' Objection challenges this Court's subject-matter jurisdiction over this matter, such a challenge "can of course be raised at any time prior to final judgment." *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571 (2004); *see also* Fed. R. Civ. P. 12(h)(3). The Court therefore addresses those jurisdictional arguments.

### A. Standing

Defendants argue that Plaintiff lacks standing to raise the claims alleged in his pleading, as required to invoke federal subject-matter jurisdiction under Article III of the Constitution. *See* Defs.' Obj. at 4-8; *see also* U.S. Const. art. III, § 2.

As the Supreme Court has recognized, "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine . . . ensure[s] that federal courts do not exceed their authority as it has been traditionally understood" by "limit[ing] the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To have standing

to sue, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

In a case that is at the pleading stage, as here, "the plaintiff must clearly allege facts demonstrating each element" of Article III standing. *Id.* (omission and internal quotation marks omitted). The Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 899 (10th Cir. 2016) (internal quotation marks omitted) (noting that "the burden of establishing standing at this stage of the litigation is lightened considerably" (internal quotation marks omitted)).

Defendant first contend that Plaintiff fails to adequately allege the first element of standing: an "injury in fact." *See* Def.'s Obj. at 5-7. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Defendants argue that Plaintiff's allegations of injury arising from the allegedly improper application of credits are conjectural and hypothetical because they "all turn on the scenario that he will, without a doubt, earn enough credits to be released once he hits his 85% date, and that the 85% date will occur before the 760-day eligibility mark." Def.'s Obj. at 6. Defendants claim that this scenario "is simply a wild guess," as there are various

6

adjustments to Plaintiff's credits that could occur during his incarceration that would result in Plaintiff not being discharged upon reaching his 85% date. *Id.*

The Court disagrees and finds that Plaintiff has alleged a particularized injury that is sufficiently actual or imminent to establish standing. Defendants' suggestions as to why Plaintiff's alleged injuries are overly conjectural are themselves speculative in nature. *See* Def.'s Obj. at 6 (arguing that "Plaintiff could become ineligible" to receive credits and that "Plaintiff could also lose" earned credits prior to his 85% date). Liberally construed, Plaintiff has alleged that he is an 85% inmate and that he is improperly being denied participation in certain cited programs while incarcerated due to his eligibility being assessed by reference to a date other than his 85% date. *See, e.g.*, Second Am. Compl. at 19; *id.* Ex. 1 (Doc. No. 34-1) at 1-2; Second Am. Compl. Ex. 7 (Doc. No. 34-7) at 1-2. Plaintiff's alleged injury is not entirely based upon an expected release from prison upon reaching the 85% date and, even assuming it was, he specifically pleads that "immediate discharge" "does occur" "100% . . . of the time for 85% inmates" "on the 85% completion date." Second Am. Compl. at 13. "An allegation of future injury may suffice if . . . there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted).

Defendants also argue that Plaintiff cannot establish redressability—i.e., that his injury is "likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547. More specifically, Defendants assert that Plaintiff has received various misconducts in the prison disciplinary system since filing his pleading. Defendants claim that those misconducts would prevent Plaintiff from being considered for the cited programs until

October 16, 2022, which is *after* the eligibility date he seeks to have implemented (that is, January 23, 2021, the date 760 days prior to his 85% completion date), even assuming the Court enters judgment in Plaintiff's favor. *See* Defs.' Obj. at 7-8.

Although Defendants attempt to rely on the Special Report and outside materials to support their contention, at this stage and in this posture the Court "must accept as true all material allegations of the complaint." *Sup. Ct. of N.M.*, 839 F.3d at 899 (internal quotation marks omitted); *cf. Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) ("Although a court may consider the *Martinez* report in dismissing a claim pursuant to [28 U.S.C.] § 1915(d), it cannot resolve material disputed factual issues by accepting the report's factual findings when they are in conflict with pleadings or affidavits." (citation omitted)).[5] Further, implementation of Plaintiff's requested calculation would afford him a concrete benefit in the form of earlier consideration for the inmate programs, even assuming the correctness of Defendants' facts. The Tenth Circuit has rejected Defendants' proposition that "complete redressability" is "require[d]," finding that this standing element is met when the requested judicial relief "would alleviate the injury to some extent." *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 903 (10th Cir. 2012). Similarly, "redressability is satisfied when a favorable decision relieves *an* injury, not every injury." *Id.* at 905.

---

[5] Such factual attacks are better suited for disposition via a Rule 12(b)(1) motion, where the court may "allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts," or at summary judgment, where "mere allegations no longer suffice" and "the elements of standing must be set forth, through specific facts, by affidavit or other evidence." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015) (internal quotation marks omitted); *Sup. Ct. of N.M.*, 839 F.3d at 899 (internal quotation marks omitted).

Accordingly, the Court overrules Defendants' objection as to Plaintiff's Article III standing to sue.

### B. Ripeness

"Constitutional ripeness is based on Article III's requirement that federal courts hear only '[c]ases' and '[c]ontroversies.'" *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019) (quoting U.S. Const. art. III, § 2). "Because federal courts cannot give advisory opinions, the matter must come to the court in 'clean-cut concrete form.'" *Id.* (quoting *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995)). "The ripeness doctrine addresses a timing question: when in time is it appropriate for a court to take up the asserted claim." *Sup. Ct. of N.M.*, 839 F.3d at 903 (alteration, emphasis, and internal quotation marks omitted).

Defendants nominally argue that Plaintiff's claims are not ripe for review for the purpose of Article III jurisdiction. *See* Defs.' Obj. at 8-9. They allege that because Plaintiff's recently earned misconduct points prevent him from being eligible for community placement prior to October 2022, his constitutional claims are insufficiently ripe for review. *See id.*

The Tenth Circuit has explained, however, that "[i]f a threatened injury is sufficiently 'imminent' to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied." *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1229 (10th Cir. 2021) (internal quotation marks omitted). And, again, Defendants' reliance on alleged factual disputes fails, at this stage of the litigation, to undermine

Plaintiff's allegations of being currently and actually injured by the prison officials' approach to sentence credits. The Court overrules Defendants' ripeness objection.

## IV.     *Plaintiff's Motion for Class Certification*

As noted, Plaintiff brought this lawsuit as a putative class action, seeking to raise claims for himself and "on behalf of all 85% sentence inmates." Pl.'s Mot. Class Certification at 1; *see* Second Am. Compl. at 1, 20. The Magistrate Judge recommended denial of class certification, primarily because Plaintiff is appearing pro se and therefore is unable to "fairly and adequately protect the interests of the class," as required to sue as a representative party. Fed. R. Civ. P. 23(a)(4); *see* R. & R. at 10-12 (citing *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000)).

Plaintiff's Objection challenges this recommendation on several bases. First, Plaintiff states that he "is suspicious that the Magistrate [Judge] is performing as an agent of [ODOC] and is not fairly adjudicating this case." Pl.'s Obj. at 4, 5. The Court entirely rejects this baseless and frivolous contention.

Second, liberally construed, Plaintiff objects that the Court erred in denying his previous requests for counsel and thus errs in relying upon his lack of counsel as a reason to deny class certification. *See id.* at 3-4. Plaintiff argues that the important interests of the putative class must be considered, as well as Defendants' ability to engage in adversarial tactics due to their own use of counsel. *See id.* at 4-5.

Since initiating this lawsuit, Plaintiff has filed two motions for appointment of counsel. *See* Doc. Nos. 16, 36; *see also* Doc. No. 37; 28 U.S.C. § 1915(e)(1) (prescribing that the court may "request" legal representation for a civil litigant "who is unable to afford

counsel"). In denying those motions, Judge Purcell found that Plaintiff "has not shown that he is unable to adequately litigate this cause of action" and "has demonstrated an understanding of and ability to communicate the bases of his claims to the Court." Order of Dec. 1, 2020 (Doc. No. 17) at 1; Order of Mar. 1, 2020 (Doc. No. 38) at 2.[6] Upon de novo review, the Court concurs with those rulings and agrees that, on the current record, appointment of counsel is not warranted. *See Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004) (noting that in determining whether the appointment of counsel for an indigent prisoner is warranted, the court considers "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims").

It follows that the Court shall accept Judge Purcell's recommendation that certification of a plaintiff class should be denied at this time. "A litigant may bring his own claims to federal court without counsel, but not the claims of others." *Fymbo*, 213 F.3d at 1321 (explaining that class representatives may not appear pro se).

## CONCLUSION

For the reasons outlined herein, the Court ACCEPTS Plaintiff's Notice of Dismissal (Doc. No. 51) and otherwise ADOPTS the recommended disposition of the Report and Recommendation issued July 30, 2021 (Doc. No. 50). Specifically:

---

[6] Plaintiff did not seek review of those orders. *See* Fed. R. Civ. P. 72(a).

(1) Plaintiff's Claim Two, as well as any claim for relief within Plaintiff's Claim Three premised upon the existence of a state-created liberty interest in the earning of sentence credits, is DISMISSED WITHOUT PREJUDICE;

(2) Defendants' Motion to Dismiss (Doc. No. 43) is DENIED AS MOOT; and

(3) Plaintiff's Motion for Class Certification (Doc. No. 35) is DENIED.

This matter is re-referred to Magistrate Judge Gary M. Purcell for further proceedings as to Plaintiff's remaining claims in accordance with the previous order of referral.

IT IS SO ORDERED this 15th day of September, 2021.

_____
CHARLES B. GOODWIN
United States District Judge